

Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004

Catherine E. Stetson
Partner
T +1 202 637 5600
D +1 202 637 5491
F +1 202 637 5910
Cate.Stetson@hoganlovells.com

July 14, 2016

**BY ELECTRONIC FILING**

Catherine O'Hagan Wolfe
  Clerk of Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
(212) 857-8500

> **Re:** <u>Grocery Manufacturers Association</u> v. <u>Sorrell</u>, No. 15-1504-cv
>
> **Notice of Supplemental Authority Pursuant to Fed. R. App. P. 28(j), Senate Bill 764, 114th Cong. (2016)**

Dear Ms. Wolfe:

Appellants offer notice that the U.S. Senate and House of Representatives have passed S. 764, a bill that provides for a national mandatory disclosure standard for bioengineered foods and preempts state genetic-engineering labeling requirements. The President is expected to sign the bill within days. *See* Alan Bjerga & Angela Greiling Keane, *Obama Ready to Sign Food-Label Bill Consumer Groups Dislike*, Bloomberg (July 13, 2016).

The bill is attached to this letter as Exhibit A.

Among other things, the bill provides that:

- "A food may bear a disclosure that the food is bioengineered only in accordance with regulations promulgated by the Secretary in accordance with this subtitle." *Id.* § 293(b)(1).

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. Hogan Lovells refers to the international legal practice comprising Hogan Lovells US LLP, Hogan Lovells International LLP, Hogan Lovells Worldwide Group (a Swiss Verein), and their affiliated businesses with offices in: Abu Dhabi  Alicante  Amsterdam  Baltimore  Beijing  Berlin  Boulder  Brussels  Caracas  Chicago  Colorado Springs  Denver  Dubai  Dusseldorf  Frankfurt  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  Houston  London  Los Angeles  Madrid  Miami  Milan  Moscow  Munich  New York  Northern Virginia  Paris  Philadelphia  Prague  Rome  San Francisco  Shanghai  Silicon Valley  Singapore  Tokyo  Warsaw  Washington DC  Associated offices: Budapest  Jeddah  Riyadh  Zagreb

- "No State or a political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food or seed in interstate commerce any requirement relating to the labeling of whether a food (including food served in a restaurant or similar establishment) or seed is genetically engineered (which shall include such other similar terms as determined by the Secretary of Agriculture) or was developed or produced using genetic engineering, including any requirement for claims that a food or seed is or contains an ingredient that was developed or produced using genetic engineering." *Id.* § 295(b).

Vermont's Act 120 requires, among other things, that certain foods "be labeled as produced entirely or in part from genetic engineering," 9 V.S.A. § 3043(a)—precisely what this bill prohibits. It therefore will be expressly preempted once the federal bill is enacted.

Appellants will of course notify the Court when the President signs the bill, but wished to apprise the Court of this potentially case-dispositive development in the interim. Once the bill is enacted into law, Appellants intend to move for voluntary dismissal of this appeal.

Sincerely,

/s/ Catherine E. Stetson
Catherine E. Stetson

*Counsel for Plaintiffs-Appellants*

cc: All Counsel of Record (by CM/ECF notice)

# EXHIBIT A

# *In the Senate of the United States,*

*July 7, 2016.*

*Resolved,* That the Senate agree to the amendment of the House of Representatives to the text of the bill (S. 764) entitled "An Act to reauthorize and amend the National Sea Grant College Program Act, and for other purposes.", do pass with the following

### SENATE AMENDMENT TO HOUSE AMENDMENT:

In lieu of the matter proposed to be inserted, insert the following:

1 **SECTION 1. NATIONAL BIOENGINEERED FOOD DISCLOSURE**
2 **STANDARD.**

3 *The Agricultural Marketing Act of 1946 (7 U.S.C.*
4 *1621 et seq.) is amended by adding at the end the following:*

5 **"Subtitle E—National Bioengi-**
6 **neered Food Disclosure Stand-**
7 **ard**

8 *"SEC. 291. DEFINITIONS.*

9 *"In this subtitle:*

1     *"(1) BIOENGINEERING.—The term 'bio-*
2     *engineering', and any similar term, as determined by*
3     *the Secretary, with respect to a food, refers to a*
4     *food—*
5     *"(A) that contains genetic material that has*
6     *been modified through in vitro recombinant*
7     *deoxyribonucleic acid (DNA) techniques; and*
8     *"(B) for which the modification could not*
9     *otherwise be obtained through conventional*
10     *breeding or found in nature.*
11     *"(2) FOOD.—The term 'food' means a food (as*
12     *defined in section 201 of the Federal Food, Drug, and*
13     *Cosmetic Act (21 U.S.C. 321)) that is intended for*
14     *human consumption.*
15     *"(3) SECRETARY.—The term 'Secretary' means*
16     *the Secretary of Agriculture.*
17 **"SEC. 292. APPLICABILITY.**
18     *"(a) IN GENERAL.—This subtitle shall apply to any*
19 *claim in a disclosure that a food bears that indicates that*
20 *the food is a bioengineered food.*
21     *"(b) APPLICATION OF DEFINITION.—The definition of*
22 *the term 'bioengineering' under section 291 shall not affect*
23 *any other definition, program, rule, or regulation of the*
24 *Federal Government.*

3

*"(c) APPLICATION TO FOODS.—This subtitle shall apply only to a food subject to—*

　*"(1) the labeling requirements under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301 et seq.); or*

　*"(2) the labeling requirements under the Federal Meat Inspection Act (21 U.S.C. 601 et seq.), the Poultry Products Inspection Act (21 U.S.C. 451 et seq.), or the Egg Products Inspection Act (21 U.S.C. 1031 et seq.) only if—*

　　*"(A) the most predominant ingredient of the food would independently be subject to the labeling requirements under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301 et seq.); or*

　　*"(B)(i) the most predominant ingredient of the food is broth, stock, water, or a similar solution; and*

　　*"(ii) the second-most predominant ingredient of the food would independently be subject to the labeling requirements under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301 et seq.).*

4

**"SEC. 293. ESTABLISHMENT OF NATIONAL BIOENGINEERED FOOD DISCLOSURE STANDARD.**

*"(a) ESTABLISHMENT OF MANDATORY STANDARD.—Not later than 2 years after the date of enactment of this subtitle, the Secretary shall—*

*"(1) establish a national mandatory bioengineered food disclosure standard with respect to any bioengineered food and any food that may be bioengineered; and*

*"(2) establish such requirements and procedures as the Secretary determines necessary to carry out the standard.*

*"(b) REGULATIONS.—*

*"(1) IN GENERAL.—A food may bear a disclosure that the food is bioengineered only in accordance with regulations promulgated by the Secretary in accordance with this subtitle.*

*"(2) REQUIREMENTS.—A regulation promulgated by the Secretary in carrying out this subtitle shall—*

*"(A) prohibit a food derived from an animal to be considered a bioengineered food solely because the animal consumed feed produced from, containing, or consisting of a bioengineered substance;*

1     *"(B) determine the amounts of a bioengi-*
2     *neered substance that may be present in food, as*
3     *appropriate, in order for the food to be a bio-*
4     *engineered food;*
5     *"(C) establish a process for requesting and*
6     *granting a determination by the Secretary re-*
7     *garding other factors and conditions under*
8     *which a food is considered a bioengineered food;*
9     *"(D) in accordance with subsection (d), re-*
10     *quire that the form of a food disclosure under*
11     *this section be a text, symbol, or electronic or*
12     *digital link, but excluding Internet website Uni-*
13     *form Resource Locators not embedded in the link,*
14     *with the disclosure option to be selected by the*
15     *food manufacturer;*
16     *"(E) provide alternative reasonable disclo-*
17     *sure options for food contained in small or very*
18     *small packages;*
19     *"(F) in the case of small food manufactur-*
20     *ers, provide—*
21     *"(i) an implementation date that is*
22     *not earlier than 1 year after the implemen-*
23     *tation date for regulations promulgated in*
24     *accordance with this section; and*

6

*"(ii) on-package disclosure options, in addition to those available under subparagraph (D), to be selected by the small food manufacturer, that consist of—*

*"(I) a telephone number accompanied by appropriate language to indicate that the phone number provides access to additional information; and*

*"(II) an Internet website maintained by the small food manufacturer in a manner consistent with subsection (d), as appropriate; and*

*"(G) exclude—*

*"(i) food served in a restaurant or similar retail food establishment; and*

*"(ii) very small food manufacturers.*

*"(3) SAFETY.—For the purpose of regulations promulgated and food disclosures made pursuant to paragraph (2), a bioengineered food that has successfully completed the pre-market Federal regulatory review process shall not be treated as safer than, or not as safe as, a non-bioengineered counterpart of the food solely because the food is bioengineered or produced or developed with the use of bioengineering.*

7

*"(c) STUDY OF ELECTRONIC OR DIGITAL LINK DISCLOSURE.—*

*"(1) IN GENERAL.—Not later than 1 year after the date of enactment of this subtitle, the Secretary shall conduct a study to identify potential technological challenges that may impact whether consumers would have access to the bioengineering disclosure through electronic or digital disclosure methods.*

*"(2) PUBLIC COMMENTS.—In conducting the study under paragraph (1), the Secretary shall solicit and consider comments from the public.*

*"(3) FACTORS.—The study conducted under paragraph (1) shall consider whether consumer access to the bioengineering disclosure through electronic or digital disclosure methods under this subtitle would be affected by the following factors:*

*"(A) The availability of wireless Internet or cellular networks.*

*"(B) The availability of landline telephones in stores.*

*"(C) Challenges facing small retailers and rural retailers.*

*"(D) The efforts that retailers and other entities have taken to address potential technology and infrastructure challenges.*

8

*"(E) The costs and benefits of installing in retail stores electronic or digital link scanners or other evolving technology that provide bioengineering disclosure information.*

*"(4) ADDITIONAL DISCLOSURE OPTIONS.—If the Secretary determines in the study conducted under paragraph (1) that consumers, while shopping, would not have sufficient access to the bioengineering disclosure through electronic or digital disclosure methods, the Secretary, after consultation with food retailers and manufacturers, shall provide additional and comparable options to access the bioengineering disclosure.*

*"(d) DISCLOSURE.—In promulgating regulations under this section, the Secretary shall ensure that—*

*"(1) on-package language accompanies—*

*"(A) the electronic or digital link disclosure, indicating that the electronic or digital link will provide access to an Internet website or other landing page by stating only 'Scan here for more food information', or equivalent language that only reflects technological changes; or*

*"(B) any telephone number disclosure, indicating that the telephone number will provide ac-*

9

1 *cess to additional information by stating only*
2 *'Call for more food information.';*
3 *"(2) the electronic or digital link will provide ac-*
4 *cess to the bioengineering disclosure located, in a con-*
5 *sistent and conspicuous manner, on the first product*
6 *information page that appears for the product on a*
7 *mobile device, Internet website, or other landing page,*
8 *which shall exclude marketing and promotional infor-*
9 *mation;*
10 *"(3)(A) the electronic or digital link disclosure*
11 *may not collect, analyze, or sell any personally iden-*
12 *tifiable information about consumers or the devices of*
13 *consumers; but*
14 *"(B) if information described in subparagraph*
15 *(A) must be collected to carry out the purposes of this*
16 *subtitle, that information shall be deleted immediately*
17 *and not used for any other purpose;*
18 *"(4) the electronic or digital link disclosure also*
19 *includes a telephone number that provides access to*
20 *the bioengineering disclosure; and*
21 *"(5) the electronic or digital link disclosure is of*
22 *sufficient size to be easily and effectively scanned or*
23 *read by a digital device.*
24 *"(e) STATE FOOD LABELING STANDARDS.—Notwith-*
25 *standing section 295, no State or political subdivision of*

10

*a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce any requirement relating to the labeling or disclosure of whether a food is bioengineered or was developed or produced using bioengineering for a food that is the subject of the national bioengineered food disclosure standard under this section that is not identical to the mandatory disclosure requirement under that standard.*

*"(f) CONSISTENCY WITH CERTAIN LAWS.—The Secretary shall consider establishing consistency between—*

 *"(1) the national bioengineered food disclosure standard established under this section; and*

 *"(2) the Organic Foods Production Act of 1990 (7 U.S.C. 6501 et seq.) and any rules or regulations implementing that Act.*

*"(g) ENFORCEMENT.—*

 *"(1) PROHIBITED ACT.—It shall be a prohibited act for a person to knowingly fail to make a disclosure as required under this section.*

 *"(2) RECORDKEEPING.—Each person subject to the mandatory disclosure requirement under this section shall maintain, and make available to the Secretary, on request, such records as the Secretary determines to be customary or reasonable in the food in-*

11

*dustry, by regulation, to establish compliance with this section.*

    *"(3) EXAMINATION AND AUDIT.—*

        *"(A) IN GENERAL.—The Secretary may conduct an examination, audit, or similar activity with respect to any records required under paragraph (2).*

        *"(B) NOTICE AND HEARING.—A person subject to an examination, audit, or similar activity under subparagraph (A) shall be provided notice and opportunity for a hearing on the results of any examination, audit, or similar activity.*

        *"(C) AUDIT RESULTS.—After the notice and opportunity for a hearing under subparagraph (B), the Secretary shall make public the summary of any examination, audit, or similar activity under subparagraph (A).*

    *"(4) RECALL AUTHORITY.—The Secretary shall have no authority to recall any food subject to this subtitle on the basis of whether the food bears a disclosure that the food is bioengineered.*

**"SEC. 294. SAVINGS PROVISIONS.**

    *"(a) TRADE.—This subtitle shall be applied in a manner consistent with United States obligations under international agreements.*

1 *"(b) OTHER AUTHORITIES.—Nothing in this sub-*
2 *title—*
3     *"(1) affects the authority of the Secretary of*
4 *Health and Human Services or creates any rights or*
5 *obligations for any person under the Federal Food,*
6 *Drug, and Cosmetic Act (21 U.S.C. 301 et seq.); or*
7     *"(2) affects the authority of the Secretary of the*
8 *Treasury or creates any rights or obligations for any*
9 *person under the Federal Alcohol Administration Act*
10 *(27 U.S.C. 201 et seq.).*
11 *"(c) OTHER.—A food may not be considered to be 'not*
12 *bioengineered', 'non-GMO', or any other similar claim de-*
13 *scribing the absence of bioengineering in the food solely be-*
14 *cause the food is not required to bear a disclosure that the*
15 *food is bioengineered under this subtitle.*

## *"Subtitle F—Labeling of Certain Food*

18 **"SEC. 295. FEDERAL PREEMPTION.**
19     *"(a) DEFINITION OF FOOD.—In this subtitle, the term*
20 *'food' has the meaning given the term in section 201 of the*
21 *Federal Food, Drug, and Cosmetic Act (21 U.S.C. 321).*
22     *"(b) FEDERAL PREEMPTION.—No State or a political*
23 *subdivision of a State may directly or indirectly establish*
24 *under any authority or continue in effect as to any food*
25 *or seed in interstate commerce any requirement relating to*

*the labeling of whether a food (including food served in a restaurant or similar establishment) or seed is genetically engineered (which shall include such other similar terms as determined by the Secretary of Agriculture) or was developed or produced using genetic engineering, including any requirement for claims that a food or seed is or contains an ingredient that was developed or produced using genetic engineering.*

**"SEC. 296. EXCLUSION FROM FEDERAL PREEMPTION.**

*"Nothing in this subtitle, subtitle E, or any regulation, rule, or requirement promulgated in accordance with this subtitle or subtitle E shall be construed to preempt any remedy created by a State or Federal statutory or common law right.".*

**SEC. 2. ORGANICALLY PRODUCED FOOD.**

*In the case of a food certified under the national organic program established under the Organic Foods Production Act of 1990 (7 U.S.C. 6501 et seq.), the certification shall be considered sufficient to make a claim regarding the absence of bioengineering in the food, such as "not bioengineered", "non-GMO", or another similar claim.*

Attest:

Secretary.

†**S 764 EAS**

114TH CONGRESS
2D SESSION **S. 764**

**SENATE AMENDMENT TO HOUSE AMENDMENT**